UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------------------------------------X
D.M. DISCOVERIES, INC.,

                              Plaintiff(s),                        REPORT AND
                                                                                    RECOMMENDATION

                  -against-                                                   CV 07-5076 (TCP) (ETB)

MICHAEL DUTTON and SHARMA DUTTON,

                              Defendant(s).
----------------------------------------------------------------X

TO THE HONORABLE THOMAS C. PLATT, UNITED STATES DISTRICT JUDGE:

      This is a request for issuance of preliminary injunctive relief arising in a diversity action asserting causes of action for breach of contract, intentional inference with a contract and "injurious statements." Money damages are sought under each of these causes of action. (Compl. ¶¶ 26-32.) On the Fourth Cause of Action, the complaint seeks a "preliminary injunction enjoining the defendants from communicating with host families, the students and the parents." (Compl, Wherefore Clause at d.; see also Order to Show Cause for a Preliminary Injunction, dated Dec. 13, 2007, at 1 ("enjoining and restraining defendants, Michael Dutton and Sharma Dutton, . . . from contacting foreign exchange students or their volunteer host families contained within the list of volunteer host families developed and contracted with plaintiff, for the State of Washington."))

FACTS

      The plaintiff, D.M. Discoveries, Inc. ("Discoveries"), based in Babylon, New York, is a not-for-profit corporation that brings together "foreign teens with volunteer American host families," thereby "becom[ing] familiar with the "American way of life by experiencing its schools, homes and

-1-

communities." (Compl. ¶ 2.) It maintains six regional offices throughout the United States and does business with students from over twenty foreign countries. (Id. ¶¶ 2-3.)

The defendant, Michael Dutton, a resident of Spokane, Washington, was an area representative formerly employed pursuant to a written agreement. (Id. ¶ 4.) His responsibility in this capacity was "locating, screening, and securing home placements . . . [for] sponsored students" and to "secure school acceptance . . . for the students and supervising the students' stay in the United States for the placement of exchange students with host families" in the State of Washington. (Id. ¶¶ 4-5.)

The defendant, Sharma Dutton, who is married to Michael Dutton, was employed as a "Manager" and responsible for procuring host families and also finding new area representatives. (Id. ¶ 6.) Both defendants were employed as independent contractors pursuant to contracts with Discoveries. The Complaint alleges that the defendants breached their contracts. (Id. ¶ 11.) Discoveries maintains that following their termination, the Duttons contacted "host families, area representatives, the U.S. State Department, C.S.I.E.T., a regulating agency for the foreign exchange student agency industry, the State Department for Washington State and the print media and purposely and intentionally published false and injurious information to malign the plaintiff's reputation and business." (Id. ¶ 26.)

The defendants, appearing pro se, deny all of the essential allegations of the complaint.

As part of the defendants' duties "they are responsible for completing a supervision report which must be filed with the State Department as well as C.S.I.E.T. in order for the plaintiff to comply with its obligations to the United States State Department, to procure and maintain appropriate J1 Visas for the foreign students in this country." (Aff. of Craig Brewer, CEO of Discoveries at 2 (unnumbered).) By Mr. Brewer's own statement, the dispute here involved a $10.00 expense for which Michael Dutton sought reimbursement. Mr. Brewer states that when Discoveries refused to reimburse him, Mr. Dutton

"threatened to withhold the report to put us in violation and non-compliance with the State Department and also indicated he would refuse to comply with his contractual obligations." (Id.) Mr. Brewer states that, for this reason, Discoveries "immediately terminated his contract and we did not renew the contract that his wife Sharma Dutton had . . . ." (Id.) There allegedly followed "false" communications from the Duttons to host families, students, foreign parents, area representatives and managers. (Id.)

A hearing was conducted with respect to this application on January 17, 2008 and February 5, 2008. The sole witness for Discoveries was its CEO, Craig Brewer. The sole witness for the defendants was defendant Sharma Dutton. The evidence introduced at the hearing is discussed infra insofar as it bears on the issue before the court. Due to deficiencies in Discoveries' proof, there has been no adequate showing of entitlement to the extraordinary equitable relief here sought, and the motion should be denied.

DISCUSSION

I. Legal Standard for a Preliminary Injunction

A preliminary injunction "is one of the most drastic tools in the arsenal of judicial remedies" and "should not be routinely granted." Hanson Trust PLC v. ML SCM Acquisition, Inc., 781 F.2d 264, 273 (2d Cir. 1986) (quoting Med. Soc'y of New York v. Toia, 560 F.2d 535, 538 (2d Cir. 1977)). In order to obtain a preliminary injunction, the movant must show: (a) that it will suffer irreparable harm in the absence of an injunction and (b) either (i) "a likelihood of success on the merits" or (ii) "sufficiently serious questions going to the merits to make them a fair ground for litigation and a balance of hardships tipping decidedly in [movant's] favor." Polymer Tech. Corp. v. Mimran, 37 F.3d 74, 77-78 (2d Cir. 1994) (quoting Coca-Cola Co. v. Tropicana Prods., 690 F.2d 312, 314-15 (2d Cir. 1982)). The purpose

of a preliminary injunction is to prevent hardship and preserve the status quo until final determination of the action. See WarnerVision Entm't v. Empire of Carolina, Inc., 101 F.3d 259, 261-62 (2d Cir. 1996). Where there is an adequate remedy at law, injunctions are unavailable except in "extraordinary circumstances." Metro Opera Ass'n, Inc. v. Local 100, Hotel Employees & Rest. Employees Int'l Union, 239 F.3d 172, 177 (2d Cir. 2001); see also Morales v. Trans World Airlines, Inc., 504 U.S. 374, 381 (1992).

"'Perhaps the single most important prerequisite for the issuance of a preliminary injunction is a demonstration that if it is not granted the applicant is likely to suffer irreparable harm before a decision on the merits can be rendered.'" Bell & Howell v. Masel Supply Co., 719 F.2d 42, 45 (2d Cir. 1983) (quoting 11 C. Wright & A. Miller, Federal Practice and Procedure, § 2948, at 431 (1973) and citing cases). Such irreparable harm must be "actual and imminent" and "not remote or speculative." Jackson Dairy, Inc. v. H.P. Hood & Sons, Inc., 596 F.2d 70, 72 (2d Cir. 1979) (citation omitted). Irreparable harm has been found in circumstances where a party is threatened with the loss of a business, see, e.g., Tom Doherty Assocs., Inc. v. Saban Entm't, Inc., 60 F.3d 27 (2d Cir. 1995), or where the threatened termination of delivery of a unique product would inevitably result in irreparable damage to the good will of the distributor. See, e.g., Reuters Ltd. v. United Press Int'l, Inc., 903 F.2d 904, 907-908 (2d Cir. 1990). However, it is well-established that "irreparable injury means injury for which a monetary award cannot be adequate compensation." Jackson Dairy, 596 F.2d at 72. Accordingly, "where money damages are adequate compensation, a preliminary injunction will not issue since equity should not intervene where there is an adequate remedy at law." Loveridge v. Pendleton Woolen Mills, Inc., 788 F.2d 914, 918 (2d Cir. 1986) (citation omitted).

II. The Complaint

The Complaint in this diversity action alleges four causes of action: (1) "injurious falsehood;" (2) breach of contract; (3) intentional interference with a contract; and (4) preliminary injunction.

The court assumes that by claiming "injurious falsehood," (Compl. ¶ 5), plaintiff means to assert a cause of action for defamation.

A. <u>Defamation</u>

In order to state a claim for defamation, a plaintiff must show "(1) that a defamatory statement of fact was made concerning [Plaintiff]; (2) that the defendant published that statement to a third party; (3) that the statement was false; (4) that there exists some degree of fault; (5) and that there are special damages or that the statement is defamatory <u>per</u> <u>se</u>." <u>Ello v. Singh</u>, 531 F. Supp. 2d 552, 575 (S.D.N.Y. 2007) (quoting <u>Muzio v. Inc. Vill. of Bayville</u>, No. 99 Civ. 8605, 2006 U.S. Dist. LEXIS 1886, at *24 (E.D.N.Y. Jan. 3, 2006)) (alteration in original). Claims for defamation asserted in federal court, as well as their pleading standards, fall within the purview of the Federal Rules of Civil Procedure. See <u>Muzio</u>, 2006 U.S. Dist. LEXIS 1886, at *24-25. Accordingly, pursuant to Rule 8, the pleading need only give sufficient notice to the defendant of the specific communication such that a defense can be prepared. See <u>id.</u>; see also <u>Camp Summit of Summitville, Inc. v. Visinski</u>, No. 05 Civ. 4994, 2007 U.S. Dist. LEXIS 28496, at *30 (S.D.N.Y. Apr. 13, 2007); <u>Scholastic, Inc. v. Stouffer</u>, 124 F. Supp. 2d 836, 849 (S.D.N.Y. 2000). Sufficient notice, however, does require some level of detail:

> In determining whether a defamation claim complies with the pleading requirements of Rule 8, the court should consider whether the complaint references the alleged defamatory statement; identifies the maker of that statement; and indicates when the statement was made, in what context it was made, whether it was made orally or in writing and whether it was made to a third party.

<u>Muzio</u>, 2006 U.S. Dist. LEXIS 1886, at *24-25 (dismissing defamation claims where most specific allegation was that defendants made public and repetitive defamatory statements); see also <u>Reilly v.</u>

Natwest Mkts. Group Inc., 181 F.3d 253, 271 (2d Cir. 1999) (affirming dismissal of defamation claim where plaintiff pleaded that defendant had said "something bad" about him). Mere conclusory statements will not suffice to support a claim for defamation. See Scholastic, 124 F. Supp.2d at 849.

In conclusory form, the Complaint, in relevant part, alleges that "after plaintiff terminated defendants' services as a result of their breach, the defendants purposely and intentionally contacted host families, area representatives, the United States State Department, C.S.I.E.T., a regulating agency for the foreign exchange student agency industry, the State Department for Washington State and the print media and purposely and intentionally published false and injurious information to malign the plaintiff's reputation and business." (Compl. ¶ 26.) The plaintiff submits no applicable case law in its memorandum of law in support of its request for a preliminary injunction relative to this cause of action. Moreover, in plaintiff's proposed "conclusions of law," no case law or statutory law is provided. (Findings of Fact and Conclusions of Law, filed Apr. 2, 2008, ¶¶ 5-6.)

In plaintiff's proposed "findings of fact," as relevant to the defamation claim, the plaintiff, consistent with the plaintiff's proof at the evidentiary hearing, asks the court to find as follows:

> (1) that defendants "communicated with host families" after their contracts were terminated;
>
> (2) that "the defendants filed a complaint with the United States State Department and local media";
>
> (3) that the defendants "continued to communicate with the parents of foreign exchange students placed in the State of Washington, host families and students . . . ." (Plaintiff's [Proposed] Findings of Fact and Conclusions of Law ¶¶ 7-9).

There is no proof, or even any claim, that any written statement by the defendants is false. Plaintiff refers the court to its Hearing Exhibits 4, 5 and 6, which consist of twenty-two (22) pages of e-mails by defendants to host families and students, as well as named governmental authorities. These

establish plaintiff's claim of post-termination communication by the defendants. They are devoid, however, of any proof as to falsity. Lastly, it appears that the Duttons' communications were confined to a three-to-four week period following their unexpected termination by plaintiff in November 2007. There is no evidence of any communication following the issuance of the order to show cause, dated December 7, 2007. Therefore, plaintiff has further failed to adequately show "actual and imminent" irreparable harm. See Jackson Dairy, 596 F.2d at 72. Lastly, for the reasons set forth below, Discoveries has failed to establish a likelihood of success on the merits to justify the relief sought herein.

      B.    <u>Tortious Interference With Contract</u>

To state a claim for tortious interference with contract under New York law, the plaintiff must allege the following: "(1) 'the existence of a valid contract between the plaintiff and a third party'; (2) the 'defendant's knowledge of the contract'; (3) the 'defendant's intentional procurement of the third-party's breach of the contract without justification'; (4) 'actual breach of the contract'; and (5) damages resulting therefrom.'" <u>Kirch v. Liberty Media Corp.</u>, 449 F.3d 388, 401 (2d Cir. 2006) (quoting <u>Lama Holding Co. v. Smith Barney Inc.</u>, 88 N.Y.2d 413, 424 (1996)). Proof of actual breach of contract is required for plaintiff to prevail on such a claim. See <u>D'Andrea v. Rafla-Demetrious</u>, 146 F.3d 64, 64 (2d Cir. 1998) ("Because there was no breach of contract in the instant case, [plaintiff's] tortious interference with contractual relations claim must fail."); <u>Downtown Women's Ctr., Inc. v. Carron</u>, 655 N.Y.S.2d 479, 480 (1st Dep't 1997) (stating that actual breach of a contract is "necessary to any cause of action for tortious interference with contract").

There is no claim - let alone any proof - that the defendants' post-termination communication with host families, students and any authorities resulted in "an actual breach." This failure to prove is a

-7-

fatal defect. Accordingly, plaintiff fails to show a likelihood that it will succeed on the merits as to this cause of action.

C. Breach of Contract

"To state a claim in federal court for breach of contract under New York law," a plaintiff must prove "(1) the existence of an agreement, (2) adequate performance of the contract by the plaintiff, (3) breach of contract by the defendant, and (4) damages." Harsco Corp. v. Segui, 91 F.3d 337, 348 (2d Cir. 1996) (citing Tagare v. NYNEX Network Sys. Co., 921 F. Supp. 1149, 1149 (S.D.N.Y. 1996)); see also Campo v. 1st Nationwide Bank, 857 F. Supp. 264, 270 (E.D.N.Y. 1994) (stating that the elements for breach of contract under New York law are "(1) the existence of a contract; (2) due performance by plaintiff; (3) breach of the contract by defendant; and (4) damages as a result of the breach").

There is also a substantial issue here as to whether the plaintiff will prevail. The contract with defendant Michael Dutton, dated February 12, 2007, is annexed to the complaint at Exhibit B. The agreement provides for termination by either party "upon thirty days written notice to the other party." (Compl., Ex. B at ¶ 7). Plaintiff concedes that it failed to provide such notice. Plaintiff asserts, and its proof at the evidentiary hearing confirmed, that defendant Michael Dutton threatened to withhold reporting until the monetary dispute with respect to reimbursement was resolved. Without any authority, plaintiff's counsel simply asserts that "[w]hen a defendant breaches a contract, notice requirements are waived for anticipatory breach of the contract." (Plaintiff's proposed "Findings of Fact and Conclusions of Law" at 4). Regardless of the outcome of this issue and more importantly, however, is the uncontroverted fact that money damages provide an adequate remedy for any breach of contract assuming, arguendo, that plaintiff is able to establish liability.

D. A Request for a Preliminary Injunction is Not a Cause of Action

It is black-letter law that "an injunction is a remedy and not a separate cause of action sustainable on its own." Spagnola v. Chubb Corp., No. 06 Civ. 9960, 2007 U.S. Dist. LEXIS 21676, at *19 (S.D.N.Y. Mar. 27, 2007) (citing Lekki Capital Corp. v. Automatic Data Processing, Inc., No. 01-7421, 2002 U.S. Dist. LEXIS 8538, at *11 (S.D.N.Y. May 13, 2002)); see also Smith v. New Line Cinema, No. 03 Civ. 5274, 2004 U.S. Dist. LEXIS 18382, at *13 (S.D.N.Y. Sept. 8, 2004) ("An injunction is a remedy and not a separate cause of action."). Rather, a plaintiff seeking injunctive relief "must allege some wrongful conduct on the part of [defendant] for which [the] requested injunction is an appropriate remedy." Reuben H. Donnelley Corp. v. Mark I Mktg. Corp., 893 F. Supp. 285, 293 (S.D.N.Y. 1995).

For this reason, the fourth cause of action is deficient.

RECOMMENDATION

The plaintiff has failed to adequately establish a likelihood of success on the merits and irreparable injury. Moreover, in any event, money damages are an adequate remedy.

For the foregoing reasons, I recommend that the request for issuance of a preliminary injunction be denied.

OBJECTIONS TO THIS REPORT AND RECOMMENDATION

Any objections to this Report and Recommendation must be filed with the Clerk of the Court with a copy to the undersigned within ten (10) days of the date of this report. Failure to file objections within the specified time waives the right to appeal the District Court's order. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b); IUE AFL-CIO Pension Fund v. Herrmann, 9 F.3d 1049, 1054 (2d Cir. 1993), cert.

denied, 115 S.Ct. 86 (1994); Frank v. Johnson, 968 F.2d 298 (2d Cir.), cert. denied, 113 S.Ct. 825 (1992); Small v. Secretary of Health and Human Serv., 892 F.2d 15, 16 (2d Cir. 1989) (per curiam).

Dated: Central Islip, New York
   August 1, 2008

                /s/ E. Thomas Boyle
                E. THOMAS BOYLE
                United States Magistrate Judge